**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**MARVIN GUYNUP,**

                 **Plaintiff,**

     v.                              **No. 07-CV-0098**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

                 **Defendant.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**THOMAS J. McAVOY**
**Senior United States District Judge**

## DECISION and ORDER

Marvin Guynup ("Guynup") brought this suit under sections 205(g) and 1631(c)(3) of the Social Security Act ("Act"), as amended, 42 U.S.C. sections 405(g) and 1383(c)(3), to review a final determination of the Commissioner of Social Security ("Commissioner") denying Claimant's application for disability insurance benefits and Supplemental Security Income ("SSI") benefits. Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

**I.    FACTS**

    **a.    Procedural History**

Guynup applied for SSI benefits on December 10, 2004. Pl.'s Br. at 1. The application was initially denied on March 3, 2005. Tr. at 18. On May 2, 2005, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at 23. The hearing occurred on August 23, 2006, before ALJ Carl E. Stephan. Tr. at 140. During the hearing, Claimant was

represented by counsel. Id. In a decision dated November 17, 2006, ALJ Stephan found that Guynup was not disabled under sections 216(I) and 223(d) of the Act. Tr. at 16. The ALJ's decision became the final determination of the Commissioner when the Appeals Council denied Plaintiff's request for review of the ALJ's decision on January 5, 2007. Tr. at 4. Plaintiff then commenced the present action seeking review of the Commissioner's decision.

### b.     Medical History

Plaintiff was born on November 5, 1948. Tr. at 143. He is currently a janitor for Green Thumb where he makes $6.75 per hour and works 56 hours every two weeks with special accommodations. Tr. at 145. Plaintiff was diagnosed with liver disease due to a Hepatitis C infection in April, 2004. Tr. at 110. It is due to fatigue brought on by the liver disease that Guynup claims disability. Tr. at 147.

On March 4, 2004, Guynup complained of abdominal pain and was seen by John W. Homer, M.D., a gastroenterologist. Tr. at 131. Dr. Homer noted abdominal distention and constipation. Id. On April 13, 2004, Glenn Shroyer, M.D., noted that Guynup had visited the Emergency Room at the Plattsburgh Health Center complaining of constipation and was referred to Dr. Homer. Tr. at 109. On April 21, 2004, Dr. Homer diagnosed Guynup with Hepatitis C. Tr. at 127. On May 25, 2004, Guynup underwent a liver biopsy. Tr. at 100. On June 1, 2004, after analyzing the results of the liver biopsy, Deonarayan P. Saha, M.D. determined that Guynup had Chronic Hepatitis, grade 3, stage III. Tr. at 101. The record contains a chart, presumably from Dr. Homer's office, showing Guynup's levels of Albumin, Creatinine, and Bilirubin total, among other things, on April 14, May 11, and June 11, 2004,

and on September 29, October 29, November 5, November 11, and December 3, 2005.  Tr. at 129.

On December 13, 2004, Guynup completed a Form SSA-3368 Disability Report.  Tr. at 62.  On the third page of that report, Guynup answered questions in connection with his previous work as a security guard.  Tr. at 64.  In his responses, Guynup stated that while performing that job he spent eight total hours each day walking or standing and one total hour sitting.  Id.

On November 29, 2004, a note signed illegibly, but resembling Dr. Shroyer's signature, states that Guynup cannot work more than 28 hours per week for 30 days.  Tr. at 102.  On January 27, 2005, Nader Wassef, M.D. performed a consultative exam in connection with Guynup's disability claim.  Tr. at 111.  Dr. Wassef did not find any physical limitations or acute distress but expressed concern that Guynup had not been taking the medication prescribed by Dr. Homer.  Tr. at 111-114.  On February 28, 2005, Dr. J. Bodnar, a state agency medical consultant, reviewed the evidence and found that Guynup had the residual functional capacity ("RFC") to sit, stand, and walk for 6 hours in every 8 hour work day and to carry 20 pounds.  Tr. at 115.  Guynup began taking the Hepatitis treatment as noted by Dr. Homer on November 1, 2005.  Tr. at 124.  During his hearing, Guynup reported that he had completed the full course of treatment.  Tr. at 162.

Guynup additionally presents new evidence which he asks to be considered on appeal.  The first is a June 15, 2007 letter from Dr. Homer.  Pl.'s Br. Addendum A at 164.  The letter explains the meaning of Guynup's diagnosis of Grade 3, Stage III chronic liver disease and describes profound fatigue as a normal symptom associated with Grade 3, Stage III chronic liver disease.  Id.  Dr. Homer opines that Guynup's medical record has not been sufficiently

developed to conclusively indicate whether he does or does not meet the criteria for disability under § 5.05.  Id.  Dr. Homer writes that it is "quite possible" that Guynup does meet the criteria for disability under § 5.05.  Id.

Guynup also presents a February 1, 2007 "Medical Report for Determination of Disability" by Dr. Shroyer.  Pl.'s Br. Addendum A at 165.  Dr. Shroyer is Guynup's primary care physician.  Pl.'s Br. at 5.  Dr. Shroyer's report states that Guynup can work at his present job only.  Pl.'s Br. at "Addendum B" at 165.  The report also indicates that Guynup can stand or walk for less than two hours per 8 hour work day.  Id, at 166.

Finally, Guynup presents a list of side effects associated with Hepatitis C treatment and a description of the Green Thumb employment program.  Pl.'s Br. Addendum B, Addendum C.

### C.  The ALJ's Analysis

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  The administrative regulations established by the Commissioner require the ALJ to apply a five-step evaluation to determine whether an individual qualifies for disability insurance benefits.  See 20 C.F.R. §§ 404.1520, 416.920; see also Williams v. Apfel, 204 F.3d 48, 48–49 (2d Cir. 1999); Bush v. Shalala, 94 F.2d 40, 44–45 (2d Cir. 1996).

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment which is listed in Appendix 1 of the regulations, [t]he

> [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Barry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

Prior to applying this five-step framework, the ALJ must determine the date on which the claimant-plaintiff last met the Act's insured status requirement, whereby the claimant must establish disability prior to or on that date last insured. See 42 U.S.C. §§ 423(a)(1)(A), 423(c)(1); 20 C.F.R. §§ 404.130, 404.131(b), 404.315(a); see also Arnone v. Bowen, 882 F.2d 34, 37–38 (2d Cir. 1989). Here, the ALJ determined that Plaintiff's insured status expired on December 31, 2007. Tr. at 13.

In the first step of the five-step analysis, the ALJ found that Guynup had not engaged in substantial gainful employment since the alleged onset of disability. Tr. at 13. At step two, the ALJ determined that Guynup's chronic stage III hepatitis C infection constituted a severe impairment. Id. At step three, the ALJ determined that Plaintiff's impairment failed to meet or equal the level of severity of any impairment listed in Appendix 1, subpart P, 20 C.F.R. § 404.1520(d). Tr. at 14. At step four, the ALJ found that Guynup retained the RFC to perform his past relevant work as a security guard, because he was able to "lift or carry a maximum of 10 pounds frequently or 20 pounds occasionally, and sit, stand or walk for up to six hours each in an eight-hour workday with normal breaks." Id. In making this finding, the ALJ relied on Guynup's description of the demands of that job. Tr. at 15. Having found Plaintiff able to perform his past relevant work, the ALJ concluded his analysis.

## II.   STANDARD OF REVIEW

The Court's review of the Commissioner's determination is limited to two inquiries.  See 42 U.S.C. § 405(g).  First, the Court determines whether the Commissioner applied the correct legal standard.  See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990); Shane v. Chater, No. 96-CV-66, 1997 WL 426203, at *4 (N.D.N.Y July 16, 1997) (Pooler, J.) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).  Second, the Court must determine whether the Commissioner's findings are supported by substantial evidence in the administrative record.  See Tejada, 167 F.3d at 773; Balsamo, 142 F.3d at 79; Cruz, 912 F.2d at 11; Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).  A Commissioner's finding will be deemed conclusive if supported by substantial evidence.  See 42 U.S.C. § 405(g); see also, Perez, 77 F.3d at 46; Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984) ("It is not the function of a reviewing court to determine *de novo* whether a claimant is disabled.  The [Commissioner's] findings of fact, if supported by substantial evidence, are binding.") (citations omitted).  In the context of Social Security cases, substantial evidence consists of "'more than a mere scintilla'" and is measured by "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L.Ed. 126 (1938)).  Where the record supports disparate findings and provides adequate support for both the plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations.  See Quinones v. Chater, 117 F.3d 29, 36 (2d Cir. 1997) (citing Schauer v.

Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)); Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990).

### III. DISCUSSION

#### a. New Evidence

Under certain circumstances, a reviewing court may consider additional evidence on appeal or, in the alternative, remand for consideration of that evidence. 42 U.S.C.A. § 405 (g). Consideration of additional evidence is only appropriate when a three-pronged test has been fulfilled:

> [A]n appellant must show that the proffered evidence is (1) " 'new' and not merely cumulative of what is already in the record," Szubak v. Secretary of Health & Human Servs., 745 F.2d 831, 833 (3d Cir.1984), and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative, see Cutler v. Weinberger, 516 F.2d 1282, 1285 (2d Cir.1975). The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently. See Szubak, 745 F.2d at 833; Chaney v. Schweiker, 659 F.2d 676, 679 (5th Cir.1981). Finally, claimant must show (3) good cause for her failure to present the evidence earlier. See Tolany v. Heckler, 756 F.2d 268, 272 (2d Cir.1985) (good cause shown where new diagnosis was based on recent neurological evaluation and assessment of response to medication required observation period).

Jones v. Sullivan, 949 F.2d 57, 60 (2d Cir. 1991). See also 42 U.S.C.A. § 405.

Here, the new evidence is the letter from Dr. Homer (Pl.'s Br. Addendum A at 163), the Medical Report for Determination of Disability from Dr. Shroyer (Pl.'s Br. Addendum A at 165), a list of side effects common to the Hepatitis C treatment that Guynup received (Pl.'s Br. Addendum B at 167), and a description of the Green Thumb employment program (Pl.'s Br. "Addendum C" at 168).

#### 1. Green Thumb Documents

Applying the three-pronged test from Jones, the first prong requires that the

evidence is new and not duplicative of information already in the record. The Green Thumb documents are clearly duplicative of the record. It was well established that Guynup's employment at Green Thumb was with special accommodation. Tr. 146, 153, 154. The Green Thumb documents are not considered on appeal.

### 2. Shroyer's Report

The second prong of the Jones test assesses whether evidence is material. One of the requirements of materiality is that the evidence be probative of the period during which benefits were denied. Cutler v. Weinberger, 516 F.2d 1282, 1285 (2d Cir. 1975). A retrospective medical assessment by a treating physician may be probative. Shaw v. Chater, 221 F.3d 126, 133 (2d Cir. 2000). Dr. Shroyer's report is from an examination that was conducted on February 1, 2007. Pl.'s Br. Addendum A at 165. The contents of the report refutes the findings of consulting physician Bodnar in connection with Guynup's RFC. Tr. at 115. However, the report is not probative of Guynup's RFC for the period during which benefits were denied. There is nothing in Dr. Shroyer's report suggesting that the examination is retrospective or relates back to 2005 when Plaintiff filed for disability benefits. As a result, Dr. Shroyer's report cannot be considered on appeal.

### 3. Dr. Homer's Letter

Applying the third prong of the Jones test, the Court finds that Plaintiff has not shown good cause why Dr. Homer's letter was not included in the original filing for disability. "Failure to obtain otherwise-available medical evidence before the hearing [...] does not constitute the 'good cause' required by the statute." Sizemore v. Commissioner of Social Sec., 1999 WL 97243, at *4 (6th Cir. Feb. 19, 1999) (Plaintiff's claim of good cause was that the evidence did not exist at the prior hearing). Here, Plaintiff argues that good cause is

satisfied because "[t]his new evidence did not exist at the time of the administrative hearing." Pl.'s Br. at 9. This is not sufficient. Plaintiff has given no reason why the evidence did not exist. During the initial hearing, Plaintiff's attorney asked for and was granted additional time to obtain evidence from Dr. Homer. Tr. at 162. This evidence was never produced. In the absence of a good cause reason explaining why the letter did not exist, it appears to the Court that it simply had not been requested. Dr. Homer's letter is not considered on appeal.

### 4. List of Treatment Side Effects

Applying the third prong from <u>Jones</u>, Plaintiff has not asserted any reason why this list of side effects of Hepatitis C treatment could not have been included in the original filing or why the information was unavailable at that time. Because no good cause for failure to previously include the list of side effects has been asserted, the list of side effects is not considered.

### b.        Weight Given to the Opinion of Treating Physicians

Plaintiff argues that the ALJ did not give proper weight to the opinion of his treating physicians. The ALJ must give a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); <u>see also</u> <u>Rosa v. Sullivan</u>, 168 F.3d 72, 78–79 (2d Cir. 1999) (citations omitted); <u>Schisler v. Sullivan</u>, 3 F.3d 563, 567 (2d Cir. 1993). In arguing that the ALJ erred, Plaintiff notes that Guynup was diagnosed with Hepatitis by his treating physicians, Drs. Saha and Homer. Tr. at 101, 125. He further mentions the November 29, 2004 note that Guynup should not work more than 28 hours per week for 30 days. Tr. at

102. Plaintiff also argues that there was not substantial evidence that Guynup could perform his past work as a security guard. Pl.'s Br. at 13.

First, the ALJ did give weight to the Hepatitis diagnoses made by Drs. Saha and Homer. Tr. at 13. Second, the November 29, 2004 note clearly applied only to a 30 day period. Finally, the issue of past work will be discussed below, but the Court notes here that there is no opinion by any treating physician as to Guynup's RFC or the type of work he could perform. Because the opinions of the treating physicians do not contradict Dr. Wassef's findings, the ALJ did not err by failing to give weight to the opinions of Plaintiff's treating physicians.

### c.     The ALJ's Determination as to the Section 5.05 Listings

Plaintiff argues that the ALJ erred in failing to explain his findings in connection with the Section 5.05 listings. The Social Security Commissioner has promulgated specific criteria for determining when a claimant has a chronic liver disease sufficiently serious to qualify as an impairment under 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ must determine whether the Plaintiff has an impairment or combination of impairments that meets or medically equals a listed impairment. 20 CFR 404.1520(d), 404.1525 and 404.1526. The listed impairment relevant to this case is section 5.05:

> In addition to confirmation of chronic liver disease by liver biopsy, a claimant must also have one of the following to meet the Listing 5.05F(1): (1) ascites not attributable to other causes, recurrent or persisting for at least 3 months, demonstrated by abdominal paracentesis or associated with persistent hypoalbuminemia of 3.0 gm. Per deciliter (100 ml) or less; (2) serum bilirubin of 2 .5 mg. Per deciliter (100 ml) or greater on repeated examinations for at least three months; or (3) hepatic cell necrosis or inflammation, persisting for at least 3 months, documented by repeated abnormalities of prothrombin time and enzymes indicative of hepatic dysfunction.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 5.05F(1) (2007).

"An ALJ must set forth the factors justifying [his] findings with sufficient specificity to allow a court to determine whether substantial evidence supports [his] decision." Lunan v. Apfel, 2000 WL 287988, at *2 (N.D.N.Y. March 10, 2000) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir.1984)).  Here, the ALJ's finding was that Guynup has not produced sufficient studies to demonstrate the listed impairment.  Plaintiff argues that the ALJ's finding was conclusory.  Certainly, the ALJ's finding could have benefitted from more clearly stated findings of fact.  However, the ALJ's conclusions are supported by substantial evidence. The ALJ concluded that Plaintiff did not produce any evidence that he had the requisite indicia of disability under the section 5.05 listings.  This conclusion is supported by the record.

### d.     The ALJ's Rejection of Guynup's Credibility

Plaintiff argues that the ALJ erred in rejecting Guynup's credibility as to the severity of his fatigue.  When a claimant complains of symptoms that cannot be demonstrated by objective evidence alone, the ALJ considers a variety of factors including claimant's daily activities, and the nature, location, onset, duration, and frequency of symptoms.  20 C.F.R. § 404.1529(c)(3).  The ALJ may properly reject Plaintiff's credibility as to subjective complaints of fatigue when doing so is supported by the Plaintiff's daily activities and medical opinions in the record.  Coyle v. Apfel, 66 F. Supp.2d 368 (N.D.N.Y. 1999). Further, the ALJ's determination of credibility should be given deference because he was able to actually assess Plaintiff's demeanor and heard his testimony.  Gernavage v. Shalala, 882 F. Supp. 1413, 1419 n.6 (S.D.N.Y. 1995).

Here, the ALJ considered Guynup's daily activities. Tr. at 14.  Dr. Bodnar considered Plaintiff's complaints of fatigue in making her RFC determination. Tr. at 119.  On January 27,

2005, Dr. Wassef opined that, per exam results, the claimant has no physical limitations. Tr. at 114. There is no opinion from any of Guynup's treating physicians that Guynup experiences debilitating fatigue. While Plaintiff's Appeal Brief notes that the Hepatitis treatment that Guynup took can lead to fatigue (Pl.'s Br. at 19), the Court notes that Guynup concluded that treatment after a matter of months (Tr. at 162). Further, Guynup has stated that in maintaining his apartment he is not limited and does whatever is required. Tr. at 75. The ALJ's determination is supported by substantial evidence.

### e.  Past Work as a Security Guard

Plaintiff argues that the ALJ erred in finding that Guynup has the RFC to perform his past work as a security guard. Residual Functioning Capacity is "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). Here, consulting physician Dr. Bodnar found that Guynup could stand, sit and walk for six hours in an eight hour work day. Tr. at 115. This opinion was uncontradicted.

The ALJ erred in finding that Guynup was able to perform his previous work as a security guard. The ALJ further erred by basing his finding in part on the fact that Guynup's current work was "more physically demanding" than his previous work as a security guard. Id.

First, Guynup reported that as a security guard he walked and stood for eight hours each day. Tr. at 64. There is no evidence in the record that Guynup is able to stand or walk for eight hours each day. In fact, Dr. Bodnar's uncontradicted opinion is that Guynup could stand or walk for six hours each day. Tr. at 115. While a gap of two hours may not seem

significant, it amounts to a 25% difference and, over the course of a month, would amount to forty hours.

Second, there is insufficient evidence in the record to support the conclusion that Guynup's current part-time job at Green Thumb is more demanding than his previous job. In fact, there is substantial evidence to the contrary. During his hearing, Guynup was questioned about the nature of his employment at Green Thumb. Tr. at 153. Guynup stated that his supervisor allows him to actually work for only fifteen to thirty minutes every two hours. Tr. at 153-154. This testimony is uncontradicted. Assuming that Guynup works for thirty minutes every two hours during an eight hour day, he will have spent a maximum of two hours performing work-related activity. Therefore, the ALJ's conclusion that this employment is more demanding than the security guard job which required Guynup to stand or walk for eight hours per day is not supported by substantial evidence.

For the foregoing reasons, the ALJ erred in concluding that there was substantial evidence to support Guynup's ability to perform his previous work and erred in concluding that substantial evidence showed that Guynup's employment at Green Thumb was more demanding than his previous work as a security guard. The Court remands for the resolution of these issues.

## IV.   CONCLUSION

In reviewing disability claims, a district court may affirm, modify, or reverse the determination of the Commissioner with or without remanding the case for a rehearing. See 42 U.S.C. § 405(g). For the reasons previously stated, the Court hereby **ORDERS** that the case be remanded to the Commissioner for proceedings consistent with this decision.

**IT IS SO ORDERED.**

Dated:July 28, 2009

Thomas J. McAvoy
Senior, U.S. District Judge